IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

                                                    Criminal No. 18-0152-018
                                                    ELECTRONICALLY FILED

    v.

JEWELL HALL, et al.,

      Defendants.

## MEMORANDUM ORDER

Before the Court is Defendant Monta Banks's counseled Motion to Withdraw Guilty Plea (ECF 1181) as well as Defendant's counseled Motion to Transfer the Northeast Ohio Correctional Center ("NEOCC"). ECF 1182. The Government filed an omnibus response to these two motions. ECF 1194. The Court will DENY the Motions for the reasons set forth below.

**I. Standard of Review**

    **A. Motion to Withdraw Guilty Plea**

With respect to Defendant's Motion to Withdraw Guilty Plea, Rule 11(d)(2)(B) of the Federal Rules of Civil Procedure indicates as follows:

> A defendant may withdraw a plea of guilty or nolo contendere:
>
> > (1) before the court accepts the plea, for any reason or no reason; or
> >
> > (2) after the court accepts the plea, but before it imposes sentence if:
> > > (A) the court rejects a plea agreement under Rule 11(c)(5); or
> > > (B) the defendant can show a fair and just reason for requesting the withdrawal.

When interpreting Rule 11, this Court acknowledges the guidance provided by the Court of Appeals for the Third Circuit as follows:

> Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim. *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001); *United States v. Martinez*, 785 F.2d 111 (3d Cir. 1986). Rather, pursuant to Federal Rule of Criminal Procedure 32(e), a defendant must have a "fair and just reason" for withdrawing a plea of guilty. 6 Fed.R.Cr.P. 32(e); *Brown*, 250 F.3d at 815. A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal. *Brown*, 250 F.3d at 815; *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989). The burden of demonstrating a "fair and just" reason falls on the defendant, and that burden is substantial. *United States v. Hyde*, 520 U.S. 670, 676–77, 117 S.Ct. 1630, 137 L.Ed.2d 935 (1997); *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1998). "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Brown*, 250 F.3d at 815 (quoting *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992), superseded by statute on other grounds as stated in, *United States v. Roberson*, 194 F.3d 408, 417 (3d Cir.1999)).

*United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

### B. Motion to Transfer to NEOCC

Defendant has requested that this Court transfer Defendant from the Allegheny County Jail to NEOCC. "The Director of the United States Marshals Service shall direct and supervise all activities of the U.S. Marshals Service including: . . . [s]ustention of custody of Federal prisoners from the time of their arrest by a marshal or their remand to a marshal by the court, until the prisoner is committed by order of the court to the custody of the Attorney General for the service of sentence, otherwise released from custody by the court, or returned to the custody of the U.S. Parole Commission or the Bureau of Prisons." 28 C.F.R. § 0.111(k).

## II. Analysis

### A. Motion to Withdraw Guilty Plea

In the instant matter, Defendant bears the burden of proving to this Court that he has a fair and just reason for requesting the withdrawal of his guilty plea. As noted above, the Court of Appeals for the Third Circuit suggests that when deciding if Defendant adequately demonstrated a "fair and just reason" to withdraw his plea, this Court must consider: (1) whether Defendant is now asserting his innocence; (2) the strength of Defendant's reasons for withdrawing his guilty plea; and (3) whether the Government will be prejudiced by the withdrawal of Defendant's guilty plea.

The Court begins its analysis by first noting that during the Change of Plea Hearing held on December 11, 2019, Defendant was asked <u>twice</u> if he understood that having been sworn, his answers were subject to the penalties of perjury if he did not answer the Court's questions truthfully. ECF 1184, p. 2-3 and p. 27-28. Twice Defendant told the Court that he understood if he did not tell the truth he could be subject to the penalties of perjury. Id.

Defendant's instant Motion to Withdraw Guilty Plea asserts that Defendant is innocent. ECF 1181, p. 2. In addition, Defendant contends that he has or had "misunderstandings" about his plea agreement. Id. Specifically, Defendant claims he has or had "misunderstandings" concerning:

> a. The impact/implications of the Government having changed the offense at Count 7 from 21 U.S.C. § 841(b)(1)(b) to 21 U.S.C. § 841(b)(1)(c);
>
> b. The effect of the Government filing an 851 Notice on the 21 U.S.C. § 841(b)(1)(c) offense rather than the prior charge of 21 U.S.C. § 841(b)(1)(b);
>
> c. The impact/implications of the Fair Sentencing Act and First Step Act on his sentencing guidelines;

d. The dangerous weapon enhancement pursuant to 2D1.1;

					e. His designation as a career offender; and

					f. His waiver of appellate rights.

ECF 1181, p. 2.  Finally, Defendant claims the Government will not be prejudiced by the withdrawal.  Id.

The Government argues that Defendant's instant assertion of innocence cannot be taken seriously.  During the Change of Plea hearing, the Government provided a summary of Defendant's offenses. During the Government's recitation of the offense conduct, the Government provided specific details concerning intercepted wiretap calls, intercepted text messages, observations of Defendant made by law enforcement while Defendant was under surveillance, and Defendant's actual participation in at least one controlled buy of narcotics made directly by Defendant.  See Plea Hearing Transcript at ECF 1184.  The Court asked Defendant during the plea hearing if he agreed with the Government's recitation "of what [he] did" and the Defendant testified, under oath, with his counsel present that he did agree with the summary of his crimes as described by the Government.  Id. at 27-28.  Accordingly, this Court finds that Defendant's Motion does not meet his burden of proving that he is innocent.

Next, Defendant contends that he has or had "misunderstandings" about his plea agreement.  Defendant believes these misunderstandings lend strength to his argument that he be allowed to withdraw his guilty plea. This Court disagrees.

First, the Court notes that Defendant completed high school and attended one and one-half years of college.  Next, on the day of the plea hearing Defendant testified that he had not taken any drugs or alcohol into his body in the 48 hours before the hearing.  Thus, Defendant was capable of understanding the proceeding that day.  Finally, as noted by the Government,

and as the Plea Hearing transcript reflects, Defendant repeatedly indicated that he understood everything that was happening during his Change of Plea Hearing. Although the Court covered several topics with Defendant during his Change of Plea hearing, the following topics are among the most significant:

> THE COURT: I direct your attention to page 6 of the original plea agreement, which has been marked at Government's Exhibit No. 1. Is that your signature on page 6?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Counsel, your signature?
>
> MR. MAKNOON: Yes, Your Honor.
>
> THE COURT: Did you read and review the entire agreement with your counsel before you signed it?
>
> THE DEFENDANT: Yes. I did.
>
> THE COURT: Do you understand all its terms and contents?
>
> THE DEFENDANT: Yes, sir.

Id. at 6.

> THE COURT: Have you read and reviewed the entire indictment with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Is that correct, Counsel?
>
> MR. MAKNOON: Yes, Your Honor.
>
> THE COURT: Do you completely understand the charges against you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any questions about the crimes charged against you in the superseding indictment?
>
> THE DEFENDANT: No, sir.

Id. at 6-7.

>THE COURT: Having explained your rights to you in detail this morning, do you still intend to plead guilty?
>
>THE DEFENDANT: Yes, sir.

Id. at 11.

>THE COURT: Do you understand the possible consequences of your guilty plea that I've reviewed with you in detail this morning?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: I direct your attention to page 6 of the original plea agreement which has been marked at Government's Exhibit No. 1. Is that your signature on page 6?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Counsel, your signature?
>
>MR. MAKNOON: Yes, Your Honor.
>
>THE COURT: Did you read and review the entire agreement with your counsel before you signed it?
>
>THE DEFENDANT: Yes. I did.
>
>THE COURT: Do you understand all its terms and contents?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Are there any other agreements or understandings with the United States Government that are not set forth in the plea agreement?
>
>THE DEFENDANT: I don't think so, sir, no.
>
>THE COURT: Well, why don't you talk to your counsel so you can give me a definite yes or no, please.
>(Private discussion between Defendant and defense counsel.)
>
>THE COURT: Did you have adequate time to talk to your attorney about that question?
>
>THE DEFENDANT: Yes, I did, sir.

        THE COURT: Are there any other agreements or understandings with the United States Government that are not set forth in the plea agreement?

        THE DEFENDANT: No.

Id. at 16-17.

        THE COURT: Has anyone made any promise or assurance to you that is not in the plea agreement to persuade you to accept this agreement?

        THE DEFENDANT: No, sir.

        THE COURT: Has anyone threatened you in any way to persuade you to accept this agreement?

        THE DEFENDANT: No, sir.

        THE COURT: Except for what is in the plea agreement, has anyone predicted or promised to you what your actual sentence will be?

        THE DEFENDANT: No, sir.

        THE COURT: Has anything I've said here today suggested to you what your actual sentence will be?

        THE DEFENDANT: No.

        THE COURT: Has anyone told you not to tell the truth or respond untruthfully to any question?

        THE DEFENDANT: No, sir.

Id. at 18.

        THE COURT: Sir, in a moment I will ask you whether you agree with the Government's summary of what you did, but first, do you understand that your answers may be later used against you in a prosecution for perjury or making a false statement if you do not answer truthfully?

        THE DEFENDANT: Yes, sir.

        THE COURT: Do you agree with the prosecution's summary of what you did?

        THE DEFENDANT: Yes, sir.

>THE COURT: Are there any additions or corrections you wish to make?
>
>THE DEFENDANT: No, sir.

Id. at 27-28.

>THE COURT: The Court finds there's a factual basis to accept Defendant's plea of guilty to the offenses charged in the superseding indictment. Having been advised of all your rights, do you still intend to plead guilty today?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Counsel, is that consistent with your advice?
>
>MR. MAKNOON: Yes, Your Honor.
>
>THE COURT: Has anyone forced you in any way to enter a plea of guilty to these charges?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Did you make this decision to plead guilty of your own free will and voluntarily?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Did you understand everything I've discussed with you today?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Have you ever had any physical or mental illness that affects your ability to understand these proceedings or my explanation of your rights?
>
>THE DEFENDANT: No, sir.
>
>THE COURT: Counsel, do you have any doubt about the Defendant's competency to plead guilty?
>
>MR. MAKNOON: No, Your Honor.
>
>THE COURT: Are you completely satisfied with your attorney's advice and representation?

        THE DEFENDANT: Yes, I am.

Id. at 28.

        THE COURT: Do you understand that in the plea agreement you're giving up your right to appeal both the validity of your plea and legality of your sentence with only three limited exceptions? You may file an appeal from the judgment and sentence of the Court only, one, if the United States files an appeal from the sentence or; two, if the sentence exceeds the applicable statutory limits set forth in the United States Code; or, three, the sentence unreasonably exceeds the applicable advisory guideline range under the United States Sentencing Guidelines. Understand?

        THE DEFENDANT: Yes, sir.

        THE COURT: Do you further understand that nothing in your waiver of appellate rights, as set forth in the plea agreement, shall preclude you from raising a claim of ineffective assistance of counsel in the appropriate forum?

        THE DEFENDANT: Yes, sir.

        THE COURT: On the other hand, do you understand that the Government retains its right to oppose any such claim on procedural or substantive grounds?

        DEFENDANT: Yes, sir.

        THE COURT: Do you understand that you're giving up your right to appeal, including that you're waiving your right to file a motion to vacate sentence under United States Code Section 2255, except as I've stated?

        THE DEFENDANT: Yes, sir.

Id. at 33.

        THE COURT: The Court finds that you're competent, that you know and understand your right to a jury trial and the consequences of waiving that right, and that you know the maximum penalties for the offenses charged. The Court, therefore, approves the plea agreement, accepts your guilty pleas, and finds you guilty of the offenses for which you have pled guilty.

Id. at 36.

Given these acknowledgements and admissions by Defendant, the Court now turns to the specific reasons proffered by Defendant.

First, Defendant claims that the Government "changed the offense at Count 7 from 21 U.S.C. § 841(b)(1)(b) [sic] to 21 U.S.C. § 841(b)(1)(c) [sic]." Count 7 was not charged in the original indictment; rather, it was charged in the superseding indictment (See Doc. No. 3). Therefore, the only "change" relating to Count 7 was that it was charged for the first time in the superseding indictment. In light of the dialog that took place between this Court and Defendant during Defendant's Change of Plea Hearing, Defendant's alleged misunderstanding fails to provide an adequate reason to allow Defendant to withdraw his plea.

Next, Defendant claims he misunderstood the effect of the Government filing an 851 Notice on the 21 U.S.C. § 841(b)(1)(C) offense rather than the 21 U.S.C. § 841(b)(1)(B) offense, and alleges that this misunderstanding has caused him to want to withdraw his guilty plea. The Court concurs with the Government's explanation of the impact of the 851 Notice as set forth in its submission. See [ECF 1194](ECF 1194), p. 28-29. Simply put, the terms of Defendant's 11(c)(1)(C) plea agreement indicate that Defendant agreed to a minimum sentence of 10 years imprisonment. If Defendant had pled guilty without the benefit of this plea agreement, Count 1 (which charges Defendant with violating 21 U.S.C. § 841(b)(1)(A)) would have placed a mandatory minimum of 15 years imprisonment on Defendant with the filing of the 851 Notice. If Defendant had pled guilty to Count 3 (which charges Defendant with violating 21 U.S.C. § 841(b)(1)(B)) without the benefit of this plea agreement – which enabled Defendant to plead guilty to a lesser included offense at Count 3 – Defendant would face a mandatory minimum term of

10 years; but, he would have had a higher career offender offense level of 37 with an advisory guideline range of 360 months to life imprisonment.  Because of the plea agreement, the Government and Defendant stipulated to an offense level of 31 with an advisory guideline range of 188 to 235 months imprisonment.  Therefore, given the advantageous terms of this Rule 11(c)(1)(C) plea agreement, Defendant's argument relating to the 851 Notice are a non-issue.

Third, the impact of the Fair Sentencing Act and First Step Act are likewise of no moment for the reasons set forth above.

Fourth, Defendant claims he misunderstood the "dangerous weapon enhancement pursuant to 2D1.1."  While this enhancement affects Defendant's offense level, the enhancement does not impact Defendant's guideline range because Defendant is deemed to be a career offender.  Accordingly, Defendant's calculations are performed in accordance with section 4B of the United States Sentencing Guidelines. Whether or not Defendant misunderstood whether Section 2D or 4B applied in this case, it does not have any bearing on Defendant's advisory guideline range.  Therefore, this argument does not persuade the Court to allow Defendant to withdraw his guilty plea.

Fifth, Defendant claims to have misunderstood "his designation as a career offender."  Defendant objected to this designation when the Presentence Investigation Report was issued.  ECF 1129.  The United States Probation Office filed an Addendum to the Presentence Investigation Report explaining its decision to apply the career offender designation to Defendant.  ECF 1130.  Defendant has not provided this Court with any authority which would allow for the withdrawal of a guilty plea due to a determination made by the United States Probation Office (which this Court has not yet accepted),

designating Defendant as a career offender.  In addition, it is notable that even if Defendant were to withdraw his plea and go to trial, the United States Probation Office would not change its position on its designation of Defendant as a career offender.  Thus, the Court will not allow defendant to withdraw his guilty plea for this reason.

Finally, Defendant claims to have misunderstood "[h]is waiver of appellate rights."  During the Change of Plea Hearing, this Court asked Defendant if he understood the terms of his plea agreement, which contained a waiver of his appellate rights, (ECF 1184, p. 16) and specifically reviewed the waiver of his appellate right with him.  Id., p. 33.  This Court finds that Defendant knew and understood the appellate rights he was foregoing, and thus, declines to allow Defendant to withdraw his guilty plea for this reason.

### B. Motion to Transfer to NEOCC

The Court is unable to grant Defendant's Motion.  Defendant essentially asserts mere inconvenience at being housed in the Allegheny County Jail instead of NEOCC. The Congressional Federal Regulation makes it clear that the director of the United States Marshals Service shall manage the custody of all Federal prisoners; thus, this Court has no authority to order a transfer, especially one based on mere inconvenience to Defendant.

### III.  Conclusions

Based on the foregoing law and analysis, both of Defendant's Motions will be denied.

## ORDER OF COURT

AND NOW, this 18th day of September, 2020, upon careful consideration of the arguments presented, the Court DENIES Defendant's Motion to Withdraw Guilty Plea (ECF 1181) and also DENIES Defendant's Motion to Transfer to the Northeast Ohio Correctional Center.  ECF 1182.

**SO ORDERED** this 18th day of September, 2020.

 s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All ECF Registered Counsel of Record